UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
WILLIE FLOWERS,

                 Plaintiff,

- against -

CHRISTIAN RUSTAND, Shield No. 9835,

                 Defendant.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

11 Civ. 1801 (BMC)

**COGAN**, District Judge.

The facts in this case under 42 U.S.C. § 1983 for false arrest are undisputed.

Defendant Police Officer Rustand saw a parked car with tinted windows. He believed the degree of tint violated N.Y. Veh. & Traf. Law § 375, which requires, in substance, that tinted vehicle windows block no more than 30% of the ambient light. He approached the car and attempted to see through the windows with his flashlight, but the tint was too heavy. Rustand requested the driver to roll down the window completely so he could see inside the vehicle but the driver refused.

Rustand called for backup and once it arrived, the driver and the passengers, one of whom is plaintiff *pro se*, obeyed his directive to exit the vehicle. Upon a visual inspection of the passenger compartment of the vehicle, Rustand saw two baggies or pouches, one of which had a crystal-like substance in it, and the other had a leaf-like substance in it. These containers were on the floor of the back seat of the vehicle where plaintiff had been sitting. Plaintiff told Rustand

that the bags or pouches contained "prayer salts" and "aloe leaves," but Rustand arrested plaintiff and the other occupants of the vehicle for possession of cocaine and marijuana.

When the police laboratory controlled substance analysis report came back, it showed that the bag containing "prayer salts" did not, in fact, contain any controlled substance. Plaintiff accepted an adjournment in contemplation of dismissal in criminal court, and brought this action. Defendant has now moved for summary judgment.[1]

Plaintiff, whose opposition to defendant's motion was due September 5, 2012, sent defendant a letter dated September 17, 2012, which the Court notes is the exact same letter plaintiff filed with the Court on August 14, 2012. Defendant has attached plaintiff's "opposition" to his reply. Although plaintiff's letter was never filed with the Court but rather belatedly mailed to defendant, the Court will consider plaintiff's letter as his opposition, due to plaintiff's *pro se* status. Having reviewed defendant's motion papers and plaintiff's opposition, and for the reasons set forth below, the Court grants summary judgment for defendant.

## DISCUSSION

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court must view all facts in the light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598 (1970)). To defeat a motion for summary judgment, the nonmoving party

---

[1] The docket reflects that throughout the pendency of this action, plaintiff has been held on unrelated charges at the Metropolitan Detention Center.

2

must offer "concrete evidence from which a reasonable juror could return a verdict in his favor . . . ." Anderson, 477 U.S. at 256, 106 S.Ct. at 2514.

In evaluating defendant's motion, I am also mindful that courts must construe *pro se* pleadings liberally and interpret them "'to raise the strongest arguments that they suggest.'" Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)). *Pro se* status does not, however, "relieve [a non-movant] of his duty to meet the requirements necessary to defeat a motion for summary judgment." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003) (citation and internal quotation marks omitted).

A § 1983 claim for false arrest derives from the Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause. Weyant v. Okst, 101 F.3d 845 (2d Cir. 1996). In analyzing claims of false arrest, courts "generally look[ ] to the law of the state in which the arrest occurred." Russo v. City of Bridgeport, 479 F.3d 196, 203 (2d Cir. 2007) (citations omitted). Under New York law, where an officer makes an arrest without a warrant, the presumption arises that the arrest was unlawful. Jenkins v. City of New York, 478 F.3d 76 (2d Cir. 2007). However, "this presumption is rebutted if, applying the reasonable, prudent person test, the arresting officer, acting in good faith, had 'reasonable cause for believing the person to be arrested to have committed'" a criminal act. Id. (citing Dillard v. City of Syracuse, 51 A.D.2d 432, 435, 381 N.Y.S.2d 913, 915 (4th Dep't 1976) (quoting People v. Coffey, 12 N.Y.2d 443, 451, 240 N.Y.S.2d 721, 726(1963)). The "good faith" requirement examines whether, when the facts are construed in favor of the plaintiff, the officer's probable cause determination was objectively reasonable. Id. Put

3

differently, the existence of probable cause is an absolute defense to a false arrest claim. Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) (citation omitted).

An officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. (citation omitted); see also Dunaway v. New York, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9 (1979). Probable cause is not negated simply because there may be an innocent explanation for the facts alleged, and "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." Panetta v. Crowley, 460 F.3d 388, 395-96 (2d Cir. 2006). In Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001), the Second Circuit held that:

> Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. Although a better procedure may [be] for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him. Nor does it matter that an investigation might have cast doubt upon the basis for the arrest. Before making an arrest, if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully prosecuted.

Id. at 70 (internal quotation marks and citations omitted). "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989).

Applying these principles to the instant case, the only issue that might have a chance of defeating defendant's motion for summary judgment is whether defendant Rustand had reasonable suspicion for the initial stop of the vehicle. Defendant Rustand would be justified in

stopping the vehicle if he reasonably believed that the driver of the car had committed a traffic infraction by having too heavily tinted windows. If Rustand had such reasonable suspicion, then the law is clear that he was entitled to order the driver as well as the occupants to exit the car. See Maryland v. Wilson, 519 U.S. 408, 117 S. Ct. 882 (1997); Mollica v. Volker, 229 F.3d 366 (2d Cir. 2000). It is equally clear that upon observing baggies or pouches on the floor from his vantage point outside of the car, Rustand had the right to seize the pouches in order to inspect their contents. The "plain view" exception to the Fourth Amendment warrant requirement "authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." United States v. Scopo, 19 F. 3d 777, 782 (2d Cir. 1994); see also United States v. Foreman, 993 F. Supp. 186, 189 (S.D.N.Y. 1998) (finding that an officer who saw the cocaine through the windshield of defendant's car was authorized to seize the illegal items).

Indeed, as plaintiff himself testified, once the occupants of the vehicle had exited, the materials were "in plain view ... on the rug of the rear backseat," where plaintiff had been sitting. Plaintiff also argues in his opposition that the "aloe leaf and prayer salt [...] were in plain few [sic] it was not hidden to make the officer believe it was drugs." Finally, it is clear that defendant Rustand, having discovered crystal-like and leaf-like materials in the car, did not have to run a lab report before arresting plaintiff for drug possession. Whether the materials were actually illegal drugs or not does not matter; the fact that they reasonably appeared to be is sufficient to create probable cause for arrest. See Howard v. Schoberle, 907 F. Supp. 671 (S.D.N.Y. 1995). Here, even plaintiff conceded both at his deposition and in his opposition letter that Rustand actually thought he had found illegal drugs.

That leaves us then with the tinted windows. As noted above, defendant Rustand testified that the tint was so heavy that he could not see through the windows even with his flashlight. Plaintiff described it somewhat differently; he thought the windows were "mildly tinted." Conceivably, especially considering plaintiff's *pro se* status, one could argue that there is an issue of fact as to whether the windows were sufficiently dark so that a reasonable police officer would have believed that the tint violated N.Y. Veh. & Traf. Law § 375.

However, I conclude that any potential dispute is not material. Just as defendant Rustand does not have to prove that the material he seized actually constituted drugs, but only that it reasonably appeared to constitute drugs, so must he be allowed the ability to make a reasonable judgment call in concluding that the tinted windows were sufficient to warrant a stop under VTL §375. See Holeman v. City of New London, 425 F.3d 184, 191 (2d Cir. 2005) ("The tinted windows alone would justify the stop if they were so dark that an officer, acting reasonably, would have suspected that there was a traffic violation."). A human being, a police officer, is not a "tint-o-meter" – a device that actually measures the amount of light that passes through tinted windows. Id. (citing United States v. Wallace, 213 F.3d 1216, 1220 (9th Cir. 2000) ("We don't call upon the officers to be scientists or carry around and use burdensome equipment to measure light transmittance, nor do we expect them to discuss the sufficiency or insufficiency of the light transmittance as if they were an expert witness on the subject.")). Although such devices exist, defendant Rustand did not have one at the time of the stop. He had to make his own assessment as to whether he was witnessing a traffic violation. Even if Rustand did not observe a violation of VTL §375, if an objectively reasonable police officer would have suspected the windows were tinted in violation of that law, the initial stop would be considered lawful. See United States v. Harrell, 268 F.3d 141 (2d Cir. 2001).

Defendant's motion might have come out differently if plaintiff had maintained that the windows were untinted. But since it is undisputed that the windows were tinted, defendant Rustand had reasonable suspicion to stop the vehicle.

Finally, even if there was a question of fact as to the propriety of the initial stop, defendant Rustand would be protected by qualified immunity. The doctrine of qualified immunity protects police officers from civil liability where (1) the conduct attributed to the officer is not prohibited by federal law; (2) the plaintiff's right not to be subjected to such conduct was not clearly established at the time of the conduct; or (3) the officer's conduct was objectively reasonable in light of clearly established legal rules. See Cuoco v. Moritsugu, 222 F.3d 99 (2d Cir. 2000). Qualified immunity generally shields government officials performing discretionary functions from civil damages liability "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038 (1987) (citing Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law")). Whether an officer may be held liable for an allegedly unlawful action generally turns on the objective reasonableness of the action, assessed in light of the legal rules that were clearly established at the time. A right is clearly established when "the contours of the right [are] . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right . . . ." McEvoy v. Spencer, 124 F.3d 92, 97 (2d Cir. 1997) (citing Anderson, 483 U.S. at 640, 107 S.Ct. at 3039). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the

unlawfulness must be apparent." Anderson, 483 U.S. at 640, 107 S.Ct. at 3039 (internal citations omitted).

No case yet has required police to carry a tint-o-meter, and a reasonable officer could well believe that it is within his discretion to make a determination of whether the tint is sufficient to warrant a stop. See United States v. Harrell, 268 F.3d 141 (2d Cir. 2001) (tinted windows were sufficient grounds to stop a vehicle, even though the officer did not rely on the tinted windows in determining to make the stop). Under these circumstances, defendant Rustand would be entitled to qualified immunity even if there was not probable cause to have stopped the vehicle.[2]

## CONCLUSION

Defendants' motion for summary judgment is granted, and the complaint is dismissed.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
September 28, 2012

---

[2] Giving plaintiff the benefit of the doubt, he may be asserting that he was improperly frisked at the time of his arrest. The officer was clearly allowed to perform this pat-down search. See Chimel v. California, 395 U.S. 752, 762-63 (1969) ("When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons . . . . In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person . . . ."). Plaintiff may also be suggesting that once at the precinct, he was subjected to a more invasive search, but he does not accuse Rustand of that search and there is no other officer named upon whom plaintiff could fix responsibility.

8